

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Paul T. Holt
County Attorney, Travis County
Austin, Texas

Dear Sir:

Opinion No. O-1959
Re: Effect of assessment of
property when descrip-
tion is improper by vir-
tue of a less number of
acres being stated than
is actually in the tract.

        This is in answer to your letter in which you
desire our opinion on the question of the validity of cer-
tain tax assessments. Your letter reads as follows:

        "From 1919 to 1939, inclusive, Mrs. Wade
M. Smith was and still is, the owner of the
345 Acre tract of land situated on the waters
of Onion Creek in Travis County. They have
assessed continually, all these years, this
amount of land and now, by re-survey of said
land, there is found to be 399.39 acres, or
54.39 acres in excess, which they did not know
they had. They honestly thought they were pay-
ing the taxes on all the land they owned. Now,
therefore, this grant of land which is an old
Mexican Grant known as the Santiago Del Valle
Survey Grant, has 44,280 acres, according to
the records of the General Land Office. There
is 2,000 acres or more of the grant of land
that has been carried on the tax rolls of Travis
County for many years prior to 1919, as 'Unknown
Owner,' and during the years 1919 to 1939 from
$40 to $23 per acre for 1939. Nearly all the
acreage of this large grant was assessed at

Honorable Paul T. Holt, Page 2

approximately $40 per acre, by the owners who
actually made their rendition, but from time to
time, land has become less valuable on these
surveys and have all been reduced to from $10
to $30 per acre, and so accepted by the County
Board of Equalization. Now, the owners and hold-
ers of these said 399.39 acres want to clear the
taxes on the extra 54.39 acres. Can the County
Commissioners Court order the Tax Collector to
collect on a smaller value for each year which,
in their judgment, they would think to be fair
and just both to the State and County and to the
Taxpayer? . . .

". . . In the event that the Court can not
grant a reasonable relief, which in their judg-
ment, they believe to be fair to all concerned,
then in event that the estate has more owners
than one, as the case might be, like this one,
would the Tax Collector be permitted to collect
in equal proportion to each heir or owner of the
part or interest which he might own in the original
grant and let the others pay theirs at a later
time?

"The fact that this land was rendered as
'Unknown Owner' for these years and not rendered
by the owner, would that give the Assessor and
Collector or Commissioners Court any right to re-
duce the value, if they found the value was too
high for said years? Could the Court take under
consideration the fact that for several years the
'Unknown roll' was higher than the original assess-
ment, would they have the right to direct the Tax
Assessor and Collector to collect on the same
average per acre on the 'unknown Roll' as was ac-
cepted by the Board of Equalization on the regular
assessed roll, if the land was the same quality?"

We have made a further investigation of the facts
in this case, and we find that the owner of this land ren-
dered it each year in question by giving only the "abstract
number", the name of the "original grantee", the "acres

Honorable Paul T. Holt, Page 3

rendered" and the "value" of the land. The "abstract number" was number 24, and that number applies to the entire Santiago Del Valle Survey of 44,280 acres. During the first few years of the period involved this owner rendered the tract as 345 acres, but during the later years of this period she rendered it as 331 acres, the decrease being due to the fact that about 14 acres had been sold to other parties.

We also ascertained that the Tax Assessor-Collector of Travis County kept an abstract book in accordance with Articles 7195 and 7196 of the Revised Civil Statutes, and that it contained a record of the Santiago Del Valle Survey and showed that it contained ten leagues, that is, 44,280 acres. We found that each year he calculated the total number of acres rendered by various owners in this survey, and subtracted this total from the number of acres in the survey, to-wit, 44,280 acres, and thereby determined the number of acres of the survey that was not on the tax rolls in the name of the known owners. This number of acres was placed on the roll as one item of unrendered and unknown property, the owner being designated as "unknown owner", the property not being described or designated in any manner except that it was in the Santiago Del Valle Survey. The Tax Assessor-Collector advises us that this excess consisted of approximately 2000 acres, and that the 54.39 acres in question is a part of this unrendered excess.

At the outset we are confronted with the question of whether or not the owner can be considered as rendering the whole tract of 399.39 acres or only a fraction of said tract, to-wit, 345/399.39 of said tract.

We believe that only a fraction of said tract was rendered. No description was given whereby the specific tract could be considered as having been rendered. The only thing rendered was 345 acres, and that particular 345 acres is not identified. The taxpayer in the case cannot complain of a faulty or insufficient description because she furnished it and cannot be misled by it. Denman v. State, (Tex. Civ. App.) 85 S. W. (2d) 252; Cooper Survey Company v. City of Waco, (Tex. Civ. App.) 71 S. W. 619; and McKickle v. Rochelle, (Tex. Civ. App.) 125 S. W. 74.

We believe that Article 7198 of the Revised Civil Statutes was intended to apply in a case of this kind. That article reads as follows:

75

Honorable Paul T. Holt, Page 4

"Each assessor, when he shall have made the assessment of his county for each year, shall, on the first day of June of each year, or as soon thereafter as practicable, carry from each person's assessment the number of acres and its value on each survey of lands, lots or blocks to that particular survey, lot or block found on the abstract books provided in Articles 7196, 7197, and 7205; and all the parts of each survey or block placed on said abstract books shall be a credit to the assessor on that particular survey. Said assessor shall deduct the total number of acres rendered on each survey or block from the total number of acres of the whole survey or block as is shown by said abstract; and, if any part is left unrendered, then he shall assess the same to the owner or owners thereof, if known, and, if unknown, then to "unknown owners," and the value thereof shall be affixed by him, sanctioned by the board of equalization; provided, that the owner or owners of any survey and grant of land may show that the survey and grant in which they are interested does not contain the full complement of acres, showing how many acres are in fact embraced within the calls of the particular survey and grant."

We have not found any reported case construing this statute with reference to the question at hand. In trying to arrive at its meaning we should bear in mind that Article 7205 takes care of the ordinary situation where the ownership of a piece of land is unknown. Direction there is for the assessor to list the ownership of the property as "unknown" in assessing it for taxes. When it is borne in mind that Article 7198 was not intended as a repetition of Article 7205, but was meant to cover a different situation, its meaning becomes clear. The abstract book in the office of the assessor showing a survey to contain a given number of acres, the burden is upon him to see that such survey is filled in with renditions covering that number of acres in the survey. If such renditions do not cover the full number of acres thus shown in the abstract book to be in the survey, there remains a balance to be assessed by the assessor. And, owners of pieces of a survey would be bound to take notice of all this. The fact that the renditions do not include a sufficient number of acres to fill out the survey according to the abstract book would put any such owner on notice that he may have all

Honorable Paul T. Holt, Page 5

or a part of the excess, and that if he does have it is subject to the additional assessment which the assessor is required to make. The above Article 7198 negatives the idea that the rendition of the tract in question, giving the quantity as 345 acres, must be taken to cover the whole interest in the tract, which it is now shown contains 399.39 acres.

We now pass to the question as to whether the assessment of the balance of the survey each year to the "unknown owner" was valid, or whether the undivided 54.39 acres in question stands in the position of never having been assessed.

We cited cases above holding that when the taxpayer furnishes the description in the rendition and assessment that he cannot complain on the ground that the description is faulty or insufficient; but as far as this excess of 54.39 acres in this tract is concerned we believe that the rule stated in the case of House v. Stone, (Tex. Sup. Ct.) 64 Tex. 677, applies. In that case the land in question had been assessed by the State against an "unknown owner," and the court held the assessment invalid because the list and assessment failed to identify the land in question, and the court said:

"'. . . The lots of land must be definitely and distinctly described, and parol proof cannot supply the deficiency in the description or boundaries. These must be ascertained from what is written. The question is not one of intention, but one of fact--What did the assessors do? Which is the specific lot on which the tax is laid? These questions must be answered from the record.'"

The assessment in this case would be against 54.39 acres in said tract of 399.39. Said 54.39 acres cannot be identified except as being an undivided part of said 399.39 acre tract; but we believe that Article 7198 authorizes such an assessment in a case like this.

The procedure for such reassessment would be under Articles 7346 and 7347 of the Revised Civil Statutes. Article 7346 reads as follows:

"Whenever any commissioners court shall discover through notice from the tax collector or otherwise that any real property has been omitted from the tax rolls for any year or years since 1884, or shall find that any previous assessments on any real property for the years mentioned are invalid, or have been declared invalid for any reason by any district court in a suit to enforce the collection of taxes on said properties, they may, at any meeting of the court, order a list of such properties to be made in triplicate and fix a compensation therefor; the said list to show a complete description of such properties and for what years such properties were omitted from the tax rolls, or for what years the assessments are found to be invalid and should be cancelled and re-assessed, or to have been declared invalid and thereby cancelled by any district court in a suit to enforce the collection of taxes. No reassessment of any property shall be held against any innocent purchaser of the same if the tax records of any county fail to show any assessment (for any year so re-assessed) by which said property can be identified and that the taxes are unpaid. The above exception, with the same limitation, shall also apply as to all past judgments of district courts canceling invalid assessments."

Article 7347 reads in part as follows:

"When said list has been so made up the commissioners court may, . . . refer such list of properties to be assessed or reassessed to the tax assessor who shall proceed at once to make an assessment of all said properties, . . . and when completed shall submit the same to the commissioners court, who shall pass upon the valuations fixed by him; and, when approved as to the values, shall cause the taxes to be computed and extended at the tax rate in effect for each separate year mentioned in said list; and, in addition thereto, shall cause to be added a penalty equal in amount to what would be six per cent interest to the date of making said list from the date such properties would have been delinquent had same been properly rendered by the owner thereof at the time and for the years stated in said list; . . ."

Honorable Paul T. Holt, Page 7


In view of the foregoing discussion, we believe that it is unnecessary to answer the other questions in your inquiry.

Our answer can be summarized as follows:  Only 345 acres of the land in question was rendered by the owner. Under Article 7198 the Assessor-collector has authority to assess in the name of an "unknown owner" any excess in a survey; and upon discovery that this particular landowner owned part of this excess such excess owned by her can be assessed against her under the procedure prescribed in Articles 7346 and 7347.  Such assessment should be of an undivided 54.39 acres in said 399.39 acre tract.


                                        Yours very truly

                                        ATTORNEY GENERAL OF TEXAS

APPROVED JUN 7 1940                     By  Cecil C. Rotsch
                                                Cecil C. Rotsch
FIRST ASSISTANT                                    Assistant
ATTORNEY GENERAL

CCR:ew

THIS OPINION CONSIDERED AND APPROVED IN LIMITED CONFERENCE